**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**



**LEE WILSON,**

    **Plaintiff,**

**v.**                                    **Civil Action No. 2:11cv241**

**WELLS FARGO BANK, N.A.,**

**and**

**SAMUEL I. WHITE, P.C.,**

    **Defendants.**

### OPINION AND ORDER

This matter is before the Court on a Notice of Removal from the Circuit Court for the City of Suffolk, Virginia filed by Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Samuel I. White, P.C. ("Trustee" and, collectively with Wells Fargo, "Defendants") and a Motion to Dismiss filed by Defendants. Defendants' Notice of Removal claims that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the central issue in Plaintiff Lee Wilson's ("Plaintiff") Complaint involves substantial questions of federal law. Specifically, Defendants allege that Plaintiff's claims arise under the Home Affordable Modification Program ("HAMP"), which is a federal program created by the Emergency Economic Stabilization Act ("EESA") to "restore liquidity and

stability to the financial system of the United States," to protect life savings, and to promote homeownership. 12 U.S.C. § 5201 et seq. In the Motion to Dismiss, Defendants argue that Plaintiff failed to state a claim upon which relief can be granted because there is no private cause of action to enforce HAMP, and that his Complaint should therefore be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, although Plaintiff's Complaint makes references to HAMP, it only alleges state-law claims in contract, tort, and under the Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. § 59.1-200. Plaintiff also seeks a preliminary injunction to prevent foreclosure.

Although Defendants filed a request for a hearing on the Motion to Dismiss, after examination of the briefs and the record, the Court has determined that a hearing on the Motion to Dismiss is unnecessary, as the facts and legal arguments are adequately presented, and the decisional process would not be aided significantly by oral argument. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, the Court sua sponte **DISMISSES** this matter for lack of subject-matter jurisdiction, and **REMANDS** this matter to the Circuit Court for the City of Suffolk, Virginia.

## I. **FACTUAL AND PROCEDURAL HISTORY**[1]

Plaintiff owns a tract of real estate in Suffolk, Virginia. Compl. ¶ 13. On December 19, 2008, Plaintiff secured a home loan from Wells Fargo in the amount of $259,521.00. Id. ¶ 14. In 2009, Plaintiff experienced a severe reduction in income and was unable to pay his mortgage payments. Id. ¶ 15.

The Trustee issued to Plaintiff a notice of foreclosure, reflecting that a foreclosure sale would take place on November 9, 2010. Id. ¶ 25. In October 2010, Plaintiff hired the law firm of Heath J. Thompson, P.C. ("HJT") to represent him in order to avoid foreclosure and negotiate with Wells Fargo. Id. ¶ 21. On October 29, 2010, HJT submitted to Wells Fargo Plaintiff's completed loan modification packet. Id. ¶ 23. Defendants' representative, Ashley, acknowledged receipt of the application and notified HJT that the foreclosure had been cancelled. Id. ¶¶ 24-25.

"The property was again scheduled for a foreclosure on December 14, 2010." Id. ¶ 27. HJT requested a postponement,

---

[1] The facts recited here are drawn from Plaintiff's Complaint and are assumed true for the purpose of deciding the motion currently before the Court. They are not to be considered factual findings for any purpose other than consideration of the pending motion. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) ("[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint.").

3

and on December 9, 2010, the foreclosure sale was cancelled. Id. ¶¶ 29-32. On December 21, 2010, HJT was told by Defendants' representative, Megan, that Plaintiff's file was still active in foreclosure and under review for a modification. Id. ¶ 33. On that same day, HJT spoke with another of Defendants' representatives, Scott, who told him that a modification had been approved and that documents had been sent to Plaintiff. Id. ¶ 34. Plaintiff did not receive the loan modification documents. Id. ¶ 35.

Over the course of the next three months, HJT made several attempts to procure the loan modification documents, submitting additional documentation and resubmitting the loan modification application when requested. Id. ¶¶ 36-43. On March 16, 2011, HJT spoke with Defendants' representative, Ms. Rita Burch, who told him that Plaintiff's paperwork was unsatisfactory "because the separation agreement signed by Mr. Wilson and his wife had not been signed by a judge." Id. ¶¶ 39, 44. HJT explained that Virginia law does not require a judge's signature for a separation agreement to be binding on the parties, like any other contract. Id. ¶ 44. This explanation did not satisfy Defendants, and on March 29, 2011, HJT was informed that Plaintiff's property was scheduled for foreclosure on April 12, 2011. Id. ¶ 45. On the same day that HJT received notice of this latest foreclosure date, he spoke with Ms. Burch. Id. ¶

4

46. "Ms[.] Burch stated that she needed a letter from HJT confirming that the separation agreement did not need to be signed by a judge." Id. Later that day, HJT faxed the requested letter to Ms. Burch. Id. ¶ 47.

On April 4, 2011, HJT was informed that Plaintiff's modification had been denied because the separation agreement was not signed by a judge. Id. ¶ 48. HJT faxed the divorce decree, which incorporated the terms of the separation agreement, with the judge's signature affixed, to Ms. Burch at Wells Fargo on April 5, 2011. Id. ¶¶ 49, 50. As of April 8, 2011, "Plaintiff [wa]s under review for a loan modification but his home [wa]s still scheduled for a foreclosure on Tuesday April 12, 2011." Id. ¶ 53. Plaintiff claims that this dual status, being under review for a loan modification and having a foreclosure sale scheduled, violated a contract between Defendants and Plaintiff. Id.

Plaintiff filed this case in the Circuit Court for the City of Suffolk, Virginia on April 8, 2011. According to the Complaint, "[a]fter receiving documents from Wells Fargo" that "solicited Plaintiff to apply for a HAMP loan modification as a first choice in foreclosure avoidance alternatives," Plaintiff "contacted Wells Fargo to seek a modification of the loan." Id. ¶¶ 15, 55. Plaintiff claims that Defendants' "active solicitation constitute[d] an irrevocable offer to Plaintiff
5

46. "Ms[.] Burch stated that she needed a letter from HJT confirming that the separation agreement did not need to be signed by a judge." Id. Later that day, HJT faxed the requested letter to Ms. Burch. Id. ¶ 47.

On April 4, 2011, HJT was informed that Plaintiff's modification had been denied because the separation agreement was not signed by a judge. Id. ¶ 48. HJT faxed the divorce decree, which incorporated the terms of the separation agreement, with the judge's signature affixed, to Ms. Burch at Wells Fargo on April 5, 2011. Id. ¶¶ 49, 50. As of April 8, 2011, "Plaintiff [wa]s under review for a loan modification but his home [wa]s still scheduled for a foreclosure on Tuesday April 12, 2011." Id. ¶ 53. Plaintiff claims that this dual status, being under review for a loan modification and having a foreclosure sale scheduled, violated a contract between Defendants and Plaintiff. Id.

Plaintiff filed this case in the Circuit Court for the City of Suffolk, Virginia on April 8, 2011. According to the Complaint, "[a]fter receiving documents from Wells Fargo" that "solicited Plaintiff to apply for a HAMP loan modification as a first choice in foreclosure avoidance alternatives," Plaintiff "contacted Wells Fargo to seek a modification of the loan." Id. ¶¶ 15, 55. Plaintiff claims that Defendants' "active solicitation constitute[d] an irrevocable offer to Plaintiff

that if he filled out the appropriate application and submitted the proper documents, he would be properly and timely reviewed for a modification or other foreclosure options." Id. ¶ 56. Plaintiff further alleges that "Defendant Wells Fargo and Plaintiff mutually and voluntarily agreed to modify Plaintiff's existing first mortgage" when he submitted the loan modification application and Wells Fargo "accepted and began working on the review of that paperwork." Id. ¶ 54, 57. As consideration and in reliance on Defendants' promise of modification, Plaintiff claims that he forfeited "the opportunity to seek other foreclosure avoidance options." Id. ¶¶ 58, 59.

Plaintiff also asserts that Defendants are estopped from claiming that there was no contract because Plaintiff "reasonably relied" to his own detriment on Defendants' promise to "review him for a HAMP loan modification." Id. ¶¶ 74-75, 77. Plaintiff also claims that the Trustee was bound by the terms of the contract between Plaintiff and Wells Fargo and breached the contract "by following through with foreclosure proceedings without first receiving certification from [] Wells Fargo that foreclosure was proper." Id. ¶¶ 85-86.

Plaintiff alleges that the contract imposed a special duty of care on Wells Fargo, like the special duty of care expected from a bank when it processes a loan application. Id. ¶ 66-67. Yet, communications with Wells Fargo over the course of two

6

years "led the Plaintiff to believe that Defendants were confused and/or negligent and were using this confusion against [him]." Id. ¶ 17. According to the Complaint, Wells Fargo breached its duty of care by failing to communicate accurately and in a timely manner with Plaintiff and failing to correctly review Plaintiff's application. Id. ¶¶ 69-70. As a result, Plaintiff suffered irreparable damage, "namely the foreclosure of [his] home and severe damage to his credit score." Id. ¶ 73.

Plaintiff also claims that Wells Fargo "engaged in behavior that demonstrates it [did] not intend to provide these services as advertised" in violation of the VCPA. Id. ¶¶ 79, 81. Furthermore, notwithstanding Plaintiff's claim that his home was already foreclosed, Plaintiff purports to seek a preliminary injunction to forestall foreclosure. Id. ¶ 87-89.

In response to Plaintiff's Complaint, Defendants filed a Notice of Removal on May 2, 2011, alleging federal question-jurisdiction and bringing the case before this Court. Defendants also filed the Motion to Dismiss on that date. Plaintiff filed no response to Defendants' Motion to Dismiss, which is now ripe for decision. On June 1, 2011 Defendants filed a request for a hearing on the Motion to Dismiss.

## II. **STANDARD OF REVIEW**

The Court must first determine whether it has federal-question jurisdiction over the claims at issue.[2] Federal-question jurisdiction exists in this case pursuant to 28 U.S.C. § 1331 if Plaintiff's claims are ones "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Such federal-question jurisdiction can be exercised over a state-law cause of action implicating federal law if "it 'appears from the [complaint] that the right to relief depends upon the construction or application of [federal law].'" Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 313 (2005) (quoting Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199 (1921)). If the Court has federal-question jurisdiction over the claims at issue, the Court may also exercise supplemental jurisdiction over the state-law aspects of Plaintiff's claims pursuant to 28 U.S.C. § 1367 when they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

---

[2] Defendants do not allege diversity of citizenship jurisdiction as a ground of federal jurisdiction pursuant to 28 U.S.C. § 1332, and thus, the Court will only consider whether federal-question jurisdiction exists.

8

"[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). This principle is embodied in Rule 12(h)(3) of the Federal Rules of Civil Procedure, which provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Moreover, a court has an independent duty to ensure that jurisdiction is proper and, if there is a question as to whether such jurisdiction exists, must "raise lack of subject-matter jurisdiction on its own motion," without regard to the positions of the parties. Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982); accord Plyler v. Moore, 129 F.3d 728, 731 n.6 (4th Cir. 1997) ("questions concerning subject-matter jurisdiction may be raised at any time by either party or sua sponte by [the] court") (citing North Carolina v. Ivory, 906 F.2d 999, 1000 n.1 (4th Cir. 1990)); UTrue, Inc. v. Page One Sci., Inc., 457 F. Supp. 2d 688, 689 (E.D. Va. 2006) ("federal courts are obligated to confront and address jurisdictional defects sua sponte 'whenever it appears the court lacks subject matter jurisdiction'") (quoting Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999)). This principle is reiterated in paragraph (c) of 28 U.S.C. § 1447, which further provides that "[i]f at any time before final

judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

### III. DISCUSSION

As noted above, Defendants have removed this case to federal court solely on the ground of federal-question jurisdiction pursuant to 28 U.S.C. § 1331. Notice of Removal ¶ 2. Defendants allege "the crux of Plaintiff's claims are alleged violations of HAMP guidelines." Mem. Law Supp. Def.'s Mot. Dismiss Compl. 2.

As a threshold matter, the Court _sua sponte_ considers whether it has subject-matter jurisdiction over this matter. Although Plaintiff only alleges state-law claims in the Complaint, the Complaint also frequently refers to HAMP procedures and guidelines. However, for the following reasons, and consistent with its prior decisions, the Court concludes that the <u>mere reference</u> to HAMP procedures and guidelines in state-law breach of contract and tort claims is not sufficient to create federal-question subject-matter jurisdiction over this matter. 28 U.S.C. § 1331.

To fully understand how a complaint's allegations affect the manner of addressing cases that involve HAMP, it is important to start with a discussion of whether HAMP creates a private right of action. Federal courts have uniformly held that relief cannot be granted to private plaintiffs for HAMP

10

claims because HAMP created no private cause of action for borrowers against lenders, but instead delegated compliance authority to Freddie Mac. <u>Bourdelais v. J.P. Morgan Chase Bank</u>, No. 3:10cv670, 2011 U.S. Dist. LEXIS 35507, at *9-10 (E.D. Va. Apr. 1, 2011) ("Courts universally rejected these claims on the ground that HAMP does not create a private right of action for borrowers against lenders and servicers."); <u>Pennington v. PNC Mortg.</u>, No. 2:10cv361, 2010 U.S. Dist. LEXIS 143157, at *10-11 (E.D. Va. Aug. 11, 2010) ("The applicable statute, 12 U.S.C. § 5229, does not expressly create a private right of action against participating mortgage servicers. Instead, it allows those aggrieved by the actions of the Treasury Department to sue the Secretary of the Treasury. . . . The creation of this private right of action against the Secretary of the Treasury, coupled with the delegation of enforcement authority to Freddie Mac, strongly implies that Congress did not intend to create a separate cause of action against participating mortgage servicers.").

The absence of such a private right of action impacts the Court's analysis of allegedly deficient claims in different ways depending on how HAMP is included in a complaint's allegations. For example, in cases that <u>directly allege</u> causes of action for violations of HAMP itself, this Court has inferred the existence of federal-question subject-matter jurisdiction and dismissed

the claims on the basis of Rule 12(b)(6) for failure to state a claim upon which relief can be granted. See Fowler v. Aurora Home Loans, No. 2:10cv623, 2011 U.S. Dist. LEXIS 73344, at *4 (E.D. Va. Mar. 31, 2011). However, when presented with removed cases that allege state-law breach of contract and tort claims that merely reference HAMP guidelines and procedures, this Court has consistently held that it lacks federal-question subject-matter jurisdiction over such claims. Asbury v. America's Servicing Co., No. 2:11cv99, slip op. at 8 (E.D. Va. July 13, 2011) (finding that "no private cause of action exists under HAMP, and congressional intent would be frustrated by this Court exercising federal question jurisdiction"); Paine v. Wells Fargo Bank, No. 2:11cv89, slip op. at 11 (E.D. Va. July 12, 2011) (finding "that Plaintiffs' right to relief for the state-law claims does not necessarily depend on resolution of a substantial question of federal law, particularly where federal law does not create a private right of action"); see also Sherman v. Litton Loan Servicing, ___ F. Supp. 2d ___, 2011 U.S. Dist. LEXIS 71756, at *7 (E.D. Va. July 1, 2011) (noting that the matter would have been dismissed for lack of subject-matter jurisdiction had diversity of citizenship not provided an alternate jurisdictional basis).

Plaintiff's removed state-court Complaint only alleges state-law contract and tort claims and a violation of the VCPA,

12

not a federal HAMP violation cause of action. Therefore, because Plaintiff's Complaint merely references HAMP guidelines and procedures, and does not attempt to allege directly a federal HAMP violation cause of action, the Court concludes that there is no federal-question subject-matter jurisdiction. In other words, Plaintiff's right to relief for the state-law claims does not necessarily depend on resolution of a substantial question of federal law, particularly where federal law does not create a private right of action. See Merrell Dow Pharm. Inc. v. Thomas, 478 U.S. 804, 808 (1986).

In light of the Court's conclusion that it lacks subject-matter jurisdiction over Plaintiff's claims in this matter, the Court does not reach a decision regarding Defendants' Rule 12(b)(6) Motion to Dismiss for failure to state a claim. Instead, the Court will sua sponte remand Plaintiff's Complaint pursuant to 28 U.S.C. § 1447(c), because there is no federal subject-matter jurisdiction based on Plaintiff's mere references to HAMP guidelines and procedures.

## IV. CONCLUSION

For the reasons stated above, the Court sua sponte **DISMISSES** this matter for lack of subject-matter jurisdiction, and hereby **REMANDS** this matter to the Circuit Court for the City of Suffolk, Virginia.

13

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ 
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 4, 2011